UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

Linda Marie Parker,

                Plaintiff,

     v.

CAROLYN W COLVIN, Acting
Commissioner of Social Security,

                Defendant.

CASE NO. 2:15-CV-01333-BHS-DWC

REPORT AND RECOMMENDATION

Noting Date: July 15, 2016

     The District Court has referred this action, filed pursuant to 42 U.S.C. § 405(g), to United States Magistrate Judge David W. Christel. Plaintiff Linda Marie Parker filed this matter seeking judicial review of Defendant's denial of her application for supplemental security income ("SSI").

     After reviewing the record, the Court concludes the Administrative Law Judge ("ALJ") erred in finding Plaintiff's mental impairments and chronic pain syndrome did not constitute a medically determinable severe impairment at Step Two. With respect to the mental impairments, the ALJ failed to properly consider the impairments when determining Plaintiff's residual

1   functional capacity ("RFC") and therefore the error at Step Two was harmful. Accordingly, this

2   matter should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the

3   Acting Commissioner of Social Security ("Commissioner") for further proceedings consistent

4   with this Report and Recommendation.

5                          <u>FACTUAL AND PROCEDURAL HISTORY</u>

6          On May 31, 2012, Plaintiff filed an application for SSI, alleging disability as of July 1,

7   2006. *See* Dkt. 9, Administrative Record ("AR") 17. The application was denied upon initial

8   administrative review and on reconsideration. *See* AR 17. A hearing was held before ALJ David

9   Johnson on November 6, 2013. AR 17. In a decision dated February 7, 2014, the ALJ determined

10  Plaintiff to be not disabled. AR 17-28. Based on Plaintiff's previous applications for SSI and

11  disability insurance benefits—which were denied and not appealed—the ALJ determined the

12  relevant period of disability commenced on the protective filing date, May 31, 2012, and

13  continued through the date of the ALJ decision. AR 17. Plaintiff did not appeal this portion of

14  the ALJ's decision. *See* Dkt. 13. Plaintiff's request for review of the ALJ's decision was denied

15  by the Appeals Council, making the ALJ's decision the final decision of the Commissioner. *See*

16  AR 1; 20 C.F.R. § 404.981, § 416.1481.

17         In Plaintiff's Opening Brief, Plaintiff maintains the ALJ erred by: (1) finding Plaintiff's

18  mental health impairments and chronic pain syndrome were not severe impairments at Step Two;

19  (2) providing legally insufficient reasons for rejecting medical source opinions; and

20  (3) incorrectly determining Plaintiff's residual functional capacity. Dkt. 13, pp. 1-2.

21                               <u>STANDARD OF REVIEW</u>

22         Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of

23  social security benefits if the ALJ's findings are based on legal error or not supported by

24

1  substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th

2  Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

3  <u>DISCUSSION</u>

4  **I.  Whether the ALJ erred by finding Plaintiff's mental impairments and chronic pain syndrome did not constitute severe impairments at Step Two.**

5

6  Plaintiff asserts the ALJ erred in failing to find her mental impairments and chronic pain

7  syndrome severe impairments at Step Two. Dkt. 13, pp. 3-6. Step Two of the administration's

8  evaluation process requires the ALJ to determine whether the claimant "has a medically severe

9  impairment or combination of impairments." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir.

10  1996) (citation omitted); 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii) (1996). An

11  impairment is "not severe" if it does not "significantly limit" the ability to conduct basic work

12  activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). "Basic work activities are 'abilities and

13  aptitudes necessary to do most jobs, including, for example, walking, standing, sitting, lifting,

14  pushing, pulling, reaching, carrying or handling.'" *Smolen*, 80 F.3d at 1290 (quoting 20 C.F.R.

15  §140.1521(b)). "An impairment or combination of impairments can be found 'not severe' only if

16  the evidence establishes a slight abnormality having 'no more than a minimal effect on an

17  individual['s] ability to work.'" *Id.* (quoting *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988)

18  (adopting Social Security Ruling "SSR" 85-28)).

19  The Step Two inquiry is merely a threshold determination as to whether a claimant has

20  raised a "prima facie case of a disability." *Hoopai v. Astrue*, 499 F.3d 1071, 1076 (9th Cir.

21  2007); *see also Smolen*, 80 F.3d at 1290 (noting the Step Two determination is a *de minimis*

22  screening device used to dispose of groundless claims). An impairment or combination of

23  impairments may be found "not severe only if the evidence establishes a slight abnormality that

24  has no more than a minimal effect on an individual's ability to work." *Smolen*, 80 F.3d at 1290.

1

    A.  Mental Impairments

2       At Step Two, the ALJ noted "the claimant has been diagnosed with depressive disorder,

3 generalized anxiety disorder and a cognitive disorder", but determined the impairments not

4 severe. AR 20. In making this conclusion, the ALJ (A) stated the mental impairment diagnosis

5 was not consistent with Plaintiff's treatment record, demonstrated abilities, and self-reports

6 regarding her abilities; and (B) gave little weight to the medical opinions of David Widlan,

7 Ph.D., James Bailey, Ph.D., and Dan Donahue, Ph.D., which referenced Plaintiff's mental

8 impairments and functional limitations. As discussed in Sections I.A.1 & I.A.2, *infra*, the ALJ

9 gave little weight to the medical opinions of Drs. Widlan, Bailey, and Donahue as part of the

10 Step Two analysis. Since the ALJ addressed the reasons for not finding the mental impairment

11 severe as part of his analysis of Dr. Widlan's medical opinion, the Court addresses each reason

12 within its discussion of the ALJ's treatment of Dr. Widlan's opinion.

13          *1.  David Widlan, Ph.D.*

14      Dr. Widlan examined Plaintiff on September 17, 2012. AR 777-82. On mental status

15 examination, Dr. Widlan noted Plaintiff's "behavior was noteworthy" and Plaintiff "performed

16 very poorly on MSE tasks; particularly, she was unable to repeat 4 digits forward on two

17 separate strings. She attributed this to significant memory issues and also stated medication may

18 impact this." AR 778. As to mood and affect, Dr. Widlan charted Plaintiff "described her mood

19 in terms of depression" and noted "[s]he was tearful and exuded a sense of hopelessness. Her

20 affect was highly flattened though congruent with her mood." AR 779. With respect to memory,

21 Dr. Widlan noted Plaintiff "struggled to identify specific time periods for life events using vague

22 chronology. She was able to remember one object (out of three) after a five-minute lapse. She

23 was able to repeat 3 digits forward and 2 digits backward." AR 779. Dr. Widlan also observed

24

Plaintiff "was not able to make basic abstractions" and "was not able to complete serial counting tasks." AR 779. Dr. Widlan also charted Plaintiff's reported activities of daily living and social functioning. AR 780.

After examining Plaintiff, Dr. Widlan diagnosed her with mental impairments of Major Depressive Disorder, Generalized Anxiety Disorder, and Cognitive Disorder NOS. AR 780. Dr. Widlan assessed Plaintiff's prognosis as poor and noted her "symptoms appear to be quite severe." AR 781. Further, he concluded "[b]ased on her performance on MSE tasks, she is not capable of handling her funds if awarded." AR 781. Finally, on his medical source statement, Dr. Widlan opined Plaintiff's "difficulties would impact her ability to persist with adequate pace." AR 781.

The ALJ dismissed Dr. Widlan's opinion and stated:

> As for the opinion evidence, David Widlan, Ph.D. performed a mental status examination and concluded the claimant does not appear to be cognitively able to accept instruction from a supervisor. She appeared to have adaptive deficits. Her difficulties would impact her ability to persist with adequate pace. The undersigned gives little weight to Dr. Widlan's opinion because [1] it is inconsistent with the minimal objective findings regarding the claimant's mental impairments in the record. [2] There is no evidence the claimant sought treatment for her asserted anxiety and depression. Furthermore, treatment notes consistently indicate she had no evidence of anxiety or depression. [3] Dr. Widlan's opinion is also inconsistent with the claimant's own statements regarding her abilities. She is able to perform her activities of daily living without interruption from her asserted mental impairments. She can engage in social activities and visit public places. She consistently appears pleasant and cooperative during treatment sessions and examinations. [4] The undersigned gives also gives [sic] Dr. Widlan's opinion little weight because it appears to be based on the claimant's subjective complaints regarding the severity of her impairments. As noted below, the undersigned finds the claimant's assertions to be less than fully credible and declines to give significant weight to an opinion based on those complaints.

AR 20 (numbering added). The ALJ also dismissed the opinions of Dr. Bailey and Dr. Donahue, State agency medical consultants, because those opinions were based upon Dr. Widlan's examination and opinion. AR 20-21.

1    The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted

2    opinion of either a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.

3    1996) (citing *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988); *Pitzer v. Sullivan*, 908 F.2d

4    502, 506 (9th Cir. 1990)). When a treating or examining physician's opinion is contradicted, the

5    opinion can be rejected "for specific and legitimate reasons that are supported by substantial

6    evidence in the record." *Lester*, 81 F.3d at 830-31 (citing *Andrews v. Shalala*, 53 F.3d 1035,

7    1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). The ALJ can

8    accomplish this by "setting out a detailed and thorough summary of the facts and conflicting

9    clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157

10   F.3d 715, 725 (9th Cir. 1998) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

11       First, the ALJ rejected Dr. Widlan's opinion at Step Two because it was inconsistent with

12   the "minimal objective findings regarding the claimant's mental impairments." AR 20. The ALJ

13   did not cite to any evidence in the record inconsistent with Dr. Widlan's opinion, nor did the ALJ

14   explain why his conclusions—rather than Dr. Widlan's clinical observations—are correct. *See*

15   AR 26-27. The ALJ's statement lacks the specificity required by the Court. As noted by the

16   Ninth Circuit:

17           To say that medical opinions are not supported by sufficient objective findings
             or are contrary to the preponderant conclusions mandated by the objective
18           findings does not achieve the level of specificity our prior cases have required,
             even when the objective factors are listed seriatim. The ALJ must do more than
19           offer his conclusions. He must set forth his own interpretations and explain
             why they, rather than the doctors', are correct. Moreover[,] the ALJ's analysis
20           does not give proper weight to the subjective elements of the doctors'
             diagnoses. The subjective judgments of treating physicians are important, and
21           properly play a part in their medical evaluations.

22   *Embrey*, 849 F.2d at 421-22 (internal footnote omitted); *see also* 20 C.F.R. §§ 404.1527(a)(2)

23   ("Medical opinions are statements from physicians and psychologists or other acceptable

24

medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions"). Here, the ALJ provided only a conclusory statement finding Dr. Widlan's assessment inconsistent with the medical records. The ALJ's blanket statement is insufficient to reject Dr. Widlan's opinion. *See Embrey*, 849 F.2d at 421-22; *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989) (the ALJ's rejection of a physician's opinion on the ground that it was contrary to clinical findings in the record was "broad and vague, failing to specify why the ALJ felt the treating physician's opinion was flawed").

Second, the ALJ rejected Dr. Widlan's opinion at Step Two because "[t]here is no evidence the claimant sought treatment for her asserted anxiety and depression." AR 20. However, "the fact that claimant may be one of millions of people who did not seek treatment for a mental disorder until late in the day is not a substantial basis on which to conclude that [a physician's] assessment of claimant's condition is inaccurate." *Van Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996). "[I]t is common knowledge that depression is one of the most underreported illnesses in the country because those afflicted often do not recognize that their condition reflects a potentially serious mental illness." *Id.* (citation omitted). Thus, rejecting Dr. Widlan's opinion because Plaintiff did not seek treatment is not specific or legitimate.

Third, the ALJ rejected Dr. Widlan's opinion at Step Two as inconsistent with Plaintiff's activities of daily living and her own statements regarding her limitations. AR 20. However, Plaintiff's performance of her daily activities was more qualified than the ALJ's description would suggest. For example, though the ALJ stated Plaintiff "is able to perform her activities of daily living without interruption from her asserted mental impairments" and "[s]he can engage in social activities and visit public places," *see* AR 20, Plaintiff's function report indicates Plaintiff

"used to be a very active and social person. Now I find it difficult to get out of bed." AR 244. Though the ALJ indicated Plaintiff "consistently appears pleasant and cooperative during treatment sessions and examinations," *see* AR 20, the record reflects Plaintiff also presented to treatment providers as "[p]outing, sad, unhappy female." AR 1148. In addition, although the ALJ generally mentioned some activities of daily living (without citation to the record), the ALJ did not identify what specific activities were inconsistent with Dr. Widlan's opinion. AR 20. The ALJ's failure to identify specific conflicting activities of daily living, or otherwise explain the nature of the alleged conflict, was error. *See*, *e.g.*, *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014). Finally, a claimant need not be "utterly incapacitated" to be eligible for disability benefits. *Smolen*, 80 F.3d at 1284, or "be penalized for attempting to lead normal lives in the face of their limitations." *Reddick*, 157 F.3d at 722. As the ALJ has not explained how Plaintiff's limited activities of daily living contradict the symptoms observed by Dr. Widlan and as Plaintiff should not be penalized for attempting to live a normal life, the ALJ erred in rejecting Dr. Widlan's opinion on this basis.

Fourth, the ALJ rejected Dr. Widlan's opinion at Step Two as based on the Plaintiff's self-reports. AR 20. "An ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a claimant self-reports that have been properly discounted as incredible." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (quoting *Morgan v. Comm'r. Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (citing *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989))). However, "when an opinion is *not more heavily* based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion." *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (emphasis added) (citing *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008). Here, Dr. Widlan performed an extensive and thorough mental

1   status examination, charting a number of results. *See* AR 461-67. He observed Plaintiff's

2   behavior as "noteworthy," assessed her performance on the MSE as poor, and noted her mood

3   was tearful and flat. AR 778-79. Based on his clinical observations, Dr. Widlan found Plaintiff

4   would not be able to manage her own funds and would have difficulty with "adequate pace." AR

5   781. Thus, the record demonstrates Dr. Widlan did not base his medical assessment largely on

6   self-reported symptoms. Rather, Dr. Widlan provided a medical source statement based on the

7   doctor's observations, the objective results of the mental status examination, and plaintiff's self-

8   reported symptoms. *See* 778-81. Thus, the ALJ's decision finding Dr. Widlan's assessment relied

9   heavily on Plaintiff's subjective complaints is not a legitimate reason to discount Dr. Widlan's

10  opinion.

11          Accordingly, in light of the foregoing discussion, none of the reasons offered by the ALJ

12  to reject Dr. Widlan's opinion are specific and legitimate, supported by substantial evidence.

13  Therefore, the ALJ erred by failing to find Plaintiff's mental impairments severe at Step Two.

14                  2.   *James Bailey, Ph.D., and Dan Donahue, Ph.D.*

15          In addition to erring at Step Two in his discussion of Dr. Widlan's opinion, the ALJ also

16  erred in rejecting other probative evidence of Plaintiff's mental impairments. The ALJ rejected

17  the opinions of State agency medical consultants Dr. Bailey and Dr. Donahue at Step Two

18  "because they are solely based on Dr. Widlan's examination of the claimant." AR 20-21. Dr.

19  Bailey opined Plaintiff has severe mental impairments of Affective Disorders, Anxiety

20  Disorders, and Organic Mental Disorders. AR 85-86. He also opined Plaintiff has moderate

21  restrictions in maintaining social functioning and maintaining concentration, persistence and

22  pace. AR 86. Dr. Donahue's opinion mirrors Dr. Bailey's opinion. *See* AR 99-101, 103-06

23  *compared with* AR 85-86. In addition, Dr. Donahue opined Plaintiff is moderately limited in her

24

1    ability to complete a normal workweek without interruption from her mental impairments. AR

2    104.

3           An ALJ "may reject the opinion of a non-examining physician by reference to specific

4    evidence in the medical record." *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998) (citing

5    *Gomez v. Chater*, 74 F.3d 967, 972 (9th Cir. 1996)); *see also Van Nguyen*, 100 F.3d at 1466 ("In

6    order to discount the opinion of an examining physician in favor of the opinion of a

7    nonexamining medical advisor, the ALJ must set forth specific, *legitimate* reasons that are

8    supported by substantial evidence in the record.") (emphasis in original) (citing *Lester*, 81 F.3d

9    at 831). All of the determinative findings by the ALJ must be supported by substantial evidence.

10   *See Bayliss,* 427 F.3d at 1214 n.1 (citing *Tidwell,* 161 F.3d at 601).

11          Here, the ALJ rejected Dr. Bailey's and Dr. Donahue's opinions because they were based

12   on Dr. Widlan's opinion. However, because the ALJ erred in his analysis of Dr. Widlan's

13   opinion, he also erred in his analysis of Dr. Bailey's and Dr. Donahue's opinions. In addition, the

14   ALJ rejected Dr. Bailey's and Dr. Donahue's opinions entirely without citation to the record.

15   The ALJ's conclusory statement rejecting their opinions is not specific and legitimate, or

16   supported by substantial evidence. *See Lester*, 81 F.3d at 831. Accordingly, the ALJ erred in

17   rejecting Dr. Bailey's and Dr. Donahue's opinions, both of whom assessed functional limitations

18   related to Plaintiff's mental impairments. Thus, the ALJ erred for this additional reason by

19   failing to find Plaintiff's mental impairments severe at Step Two.

20                 *3.   Harmless Error Analysis*

21           "[H]armless error principles apply in the Social Security context." *Molina v. Astrue*, 674

22   F.3d 1104, 1115 (9th Cir. 2012). An error is harmless, however, only if it is not prejudicial to the

23   claimant or "inconsequential" to the ALJ's "ultimate nondisability determination." *Stout v.*

24

*Comm'r, Social Security Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *see also Molina*, 674 F.3d at 1115. The determination as to whether an error is harmless requires a "case-specific application of judgment" by the reviewing court, based on an examination of the record made "'without regard to errors' that do not affect the parties' 'substantial rights.'" *Molina*, 674 F.3d at 1118-19 (quoting *Shinseki v. Sanders*, 556 U.S. 396, 407 (2009) (quoting 28 U.S.C. § 2111)). If the ALJ accounts for all Plaintiff's limitations in assessing the RFC, the Step Two error is harmless. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

In determining Plaintiff's RFC, the ALJ did not discuss the opinions of Drs. Widlan, Bailey, and Donahue and the functional limitations they assessed. *See* AR 21-26. Rather, the ALJ only offered a blanket statement noting "the opinion of greater mental limitations is given little weight. Even if the claimant were more limited than found herein, most of the example occupations identified below do not require significant interaction with the public or coworkers." *See* AR 26 (without citation to the record). As an initial matter, the Court cannot determine if the ALJ properly considered Plaintiff's mental impairments based on a single conclusory statement. Without more, the ALJ has failed to meet the level of specificity required to reject a physician's opinion. *See Embrey*, 849 F.2d at 421-22 (conclusory reasons do "not achieve the level of specificity" required to justify an ALJ's rejection of an opinion); *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989) (an ALJ's rejection of a physician's opinion on the ground that it was contrary to clinical findings in the record was "broad and vague, failing to specify why the ALJ felt the treating physician's opinion was flawed").

Further, the ALJ did not include or discuss the functional limitations related to Plaintiff's mental impairments in determining Plaintiff's RFC. *See* AR 21-26. For example, Dr. Widlan determined Plaintiff would "not appear to be cognitively able to accept instruction from a

supervisor." AR 781. However, the RFC does not include any limitations related to Plaintiff's ability to accept instruction from a supervisor. *See* AR 21. Similarly, although Dr. Bailey opined Plaintiff would have moderate difficulties in maintaining social functioning and moderate difficulties in maintaining concentration, persistence, or pace, the ALJ did not include these functional limitations in the RFC. *Compare* AR 86 *with* AR 21. Finally, although Dr. Donahue opined Plaintiff would be moderately limited in her ability to interact appropriately with the general public, coworkers, and peers, the ALJ did not include this limitation in the RFC. *Compare* AR 105 *with* AR 21. When the ALJ ignores significant and probative evidence in the record favorable to a claimant's position, the ALJ "thereby provide[s] an incomplete residual functional capacity determination." *Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012). Even if the Court refers to the ALJ's Step Two analysis regarding the medical opinion evidence, the Court has already determined the ALJ erred in his treatment of Drs. Widlan's, Bailey's, and Donahue's medical opinions. *See* Sections I.A.1 & I.A.2, *supra*. As the ALJ failed to discuss the significant, probative evidence favorable to Plaintiff contained in the medical opinions, the RFC was incomplete and the ALJ's error was not harmless.[1]

---

[1] Plaintiff also contends the ALJ erred at Step Two by failing to discuss other probative evidence in the record related to her mental impairment diagnoses. *See* Dkt. 13, 3-7. Multiple doctors diagnosed Plaintiff with a variety of mental impairments, including anxiety, depression, insomnia, and fatigue. *See* AR 743, 746, 748, 752-53. The Court agrees the ALJ did not discuss additional medical opinions discussing Plaintiff's mental impairments when he determined Plaintiff's mental impairment "diagnoses are inconsistent with the treatment record," *see* AR 20, and the ALJ erred in failing to do so. *See Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995) (noting an ALJ "may not reject 'significant probative evidence' without explanation") (citations omitted). However, while additional doctors diagnosed Plaintiff with mental impairments, they did not opine the diagnoses resulted in functional limitations. Thus, the Court finds any error in failing to discuss these additional diagnoses was harmless. *See Stout*, 454 F.3d at 1055; *Molina*, 678 F.3d at 1115. Nevertheless, as this matter is already remanded due to the ALJ's other errors at Step Two, the ALJ shall also address the additional medical opinion evidence discussing Plaintiff's mental impairments.

1     B.  Chronic Pain Syndrome

2           1.  *Whether Plaintiff's Chronic Pain Was Severe at Step Two*

3     Although the ALJ noted "chronic pain syndrome … ha[s] been assessed," he determined

4 it was not a severe impairment at Step Two because it was "not substantiated longitudinally

5 through the treatment history" and "appear[s] to have been [assessed] based on the claimant's

6 reports, which … lack credibility and appear to have been motivated by factors such as

7 secondary gain." AR 20. "[I]n evaluating a claimant's subjective complaints of pain [or other

8 symptoms], the adjudicator must give full consideration to all of the available evidence, medical

9 *and other,* that reflects on the impairment and any attendant limitations of function." *Smolen*, 80

10 F.3d at 1285 (citation omitted). In addition the ALJ is "required to consider the claimant's

11 subjective symptoms, such as pain or fatigue, in determining severity" at Step Two. *Id.* at 1290;

12 *see also Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995) (an ALJ "may not reject

13 significant probative evidence without explanation").

14     The record shows Plaintiff experienced chronic pain throughout the alleged period of

15 disability. On May 25, 2012, Dr. Doug Kim—who had treated Plaintiff since 2010—diagnosed

16 Plaintiff with chronic pain. AR 746. On July 12, 2012 and August 3, 2012, Plaintiff was seen in

17 the emergency room by two different doctors, both of whom diagnosed her with chronic pain.

18 AR 1024, 1113. At the August 3, 2012 visit, Dr. Rajendra Suvarna "advised [Plaintiff] to see a

19 pain management specialist on an outpatient basis for a management [sic] of her pain symptoms

20 as pain symptoms appears to be an ongoing problem with every hospitalization of hers." AR

21 1113. On October 19, 2012, Dr. Hui Wang saw Plaintiff, per Dr. Debra Kraft's referral, for

22 chronic pain management. AR 818-20. Dr. Wang noted Plaintiff complained of "generalized

23 pain over the body" and overall, Plaintiff's "pain is quite widespread with features of

24

1   fibromyalgia." AR 818. After assessing Plaintiff, Dr. Wang diagnosed her with "[c]hronic pain

2   syndrome with widespread nature secondary to fibromyalgia." AR 820. On October 2, 2013, Dr.

3   Stephen Haggard completed a medical assessment of Plaintiff's ability to do work-related

4   activities. AR 1140-43. Dr. Haggard assessed Plaintiff with the limitation to "periodically

5   alternate sitting and standing to relieve pain or discomfort" due to "low spine sciatica [and]

6   chronic pain syndrome." AR 1141. He also indicated Plaintiff would be limited to less than

7   sedentary work and could only stand for fewer than two hours in an 8-hour workday. *See* AR

8   1140-43; AR 25.

9          Here, contrary to the ALJ findings, there is significant medical history which

10   demonstrates a substantiated longitudinal history of chronic pain. Moreover, the ALJ provides no

11   discussion on the probative evidence regarding plaintiff's chronic pain except the conclusion the

12   medical opinions "appear to have been made on claimant's reports … and motivated by factors

13   such as secondary gain." *See* AR 20. The ALJ erred at Step Two by failing to discuss probative

14   evidence showing Plaintiff's diagnoses and symptoms of chronic pain as well as opined

15   functional limitations. Since the Step Two determination is a *de minimis* screening device used to

16   dispose of groundless claims, the Court finds Plaintiff's chronic pain is a severe impairment at

17   Step Two. *See Smolen*, 80 F.3d at 1290.

18                    *2.   Harmless Error Analysis*

19          The ALJ's error in his treatment of Plaintiff's chronic pain is harmless if he accounted for

20   Plaintiff's chronic pain when assessing Plaintiff's RFC. *See Lewis*, 498 F.3d at 911. The only

21   functional limitations from Plaintiff's chronic pain were included in Dr. Haggard's opinion; no

22   other doctors assessed functional limitations based on Plaintiff's chronic pain diagnoses. *See* AR

23   746, 818-20, 1024, 1113 (all diagnosing Plaintiff with chronic pain, but not opining as to any

24

1   functional limitations based upon the diagnoses). Thus, the Court will analyze the ALJ's Step

2   Four assessment of Dr. Haggard's opinion to determine if the ALJ's error regarding chronic pain

3   at Step Two was harmless.

4          Dr. Haggard is Plaintiff's podiatrist and saw Plaintiff for "physical medicine relief foot

5   neuralgia and plantar fasciitis." AR 1140. From June 19, 2013 to September 30, 3013, Dr.

6   Haggard saw Plaintiff one to two times per month. AR 1140, 1127-38. On November 2, 2013,

7   Dr. Haggard completed a medical assessment of ability to do work-related activities. AR 1140-

8   43. Dr. Haggard opined in part Plaintiff "[m]ust periodically alternate sitting and standing to

9   relieve pain or discomfort" due to "low spine sciatica [and] chronic pain syndrome." AR 1141.

10  Although Dr. Haggard opined Plaintiff has additional functional limitations related to sciatica

11  and conditions of the feet, Dr. Haggard did not opine Plaintiff has additional limitations caused

12  by chronic pain. *See* AR 1140-43.

13         The ALJ gave Dr. Haggard's opinion little weight and stated:

14         He provides limitation[s] regarding the claimant's handling, reaching, and
           manipulation based solely on her foot conditions. [1] Besides being outside his
15         specialty, it is not clear how her identified impairments could impair her reaching,
           handling or limitation. [2] Furthermore, she demonstrated no limitations in these
16         areas during an examination. [3] He also attributes the claimant's limitations to
           her "sciatica" even though there is no evidence to support this impairment in the
17         record. [4] His opinion appears to be largely based on the claimant's subjective
           complaints regarding the severity of her impairments.
18
    AR 25-26 (numbering added; citations omitted).
19
20         As noted above, to reject the testimony of a medically acceptable treating source, the ALJ

21  must provide specific, legitimate reasons based on substantial evidence in the record. *Valentine*,

22  574 F.3d at 692. Podiatrists are considered "[a]cceptable medical sources" in their respective

23  areas of specialty only. 20 C.F.R. § 404.1513(a); *see also Bailey v. Astrue*, 725 F. Supp. 2d 1244,

24  1255 n.2 (E.D. Wash. 2010).

1    First, the ALJ rejected Dr. Haggard's opinion because it was outside his area of specialty

2    and it is unclear how the opined limitation related to Plaintiff's foot conditions. AR 25.

3    Podiatrists may "provide evidence to establish an impairment" but only "for purposes of

4    establishing impairments of the foot, or foot and ankle." 20 C.F.R. § 404.1513(a), (a)(4). Dr.

5    Haggard opined Plaintiff has limitations relating to her ability to handle, reach, and manipulate

6    objects with her hands, and he based this assessment on Plaintiff's foot conditions. *See* AR 1142.

7    Given that Dr. Haggard is limited to establishing impairments of the foot, the Court concludes

8    the ALJ provided a specific and legitimate reason to reject any portion of Dr. Haggard's opinion

9    outside his specialty, including any limitations related to Plaintiff's hands. Similarly, the Court

10   agrees it is unclear based upon the record how Plaintiff's foot conditions impact Plaintiff's

11   hands. Thus, the ALJ's rejection of Dr. Haggard's opinion on this basis is specific and

12   legitimate, supported by substantial evidence in the record.

13   Second, the ALJ discounted Dr. Haggard's opinion because Plaintiff did not demonstrate

14   any limitations related to her ability to handle, reach or manipulate with her hands. AR 25-26.

15   Regardless of the fact Dr. Haggard is not permitted to opine on conditions other than those

16   related to feet or ankles, none of Dr. Haggard's treatment notes indicate Plaintiff had difficulty

17   handling, reaching, or manipulating with her hands. *See* AR 1127-38. Thus, the ALJ reasonably

18   discounted Dr. Haggard's opined limitations as inconsistent with his treatment records. *See*

19   *Tommasetti*, 533 at 1041 (finding the ALJ reasonably rejected a medical opinion where the

20   opined limitations were inconsistent with physician's treatment records).

21   Third, the ALJ similarly discounted Dr. Haggard's opinion because he based opined

22   limitations on sciatica, for which the ALJ determined there is no evidence in the treatment

23   record. AR 25-26. Although Dr. Haggard assessed Plaintiff with sciatica on one visit, *see* AR

24

1128, the Court agrees the ALJ reasonably concluded Dr. Haggard's treatment notes do not

support opined limitations based on Plaintiff's alleged sciatica. As noted above, a podiatrist may

only opine limitations based on foot and ankle conditions, and sciatica is not a foot or ankle

condition. *See* 20 C.F.R. § 404.1513(a), (a)(4); *Moules v. Heckler*, 600 F. Supp. 37, 39 (N.D.

Cal. 1984)("'[S]ciatica' is 'a syndrome characterized by pain radiating from the back into the

buttock and into the lower extremity along the posterior or lateral back.'"). But, aside from being

outside his specialty, nothing in Dr. Haggard's records indicates he treated Plaintiff for sciatica

or examined her for sciatica. *See* AR 1027-38. Thus, the ALJ provided a specific and legitimate

reason, supported by substantial evidence and reasonably rejected Dr. Haggard's opinion as

inconsistent with the treatment records. *See Tommasetti*, 533 at 1041; *Andrews v. Shalala,* 53

F.3d 1035, 1039–40 (9th Cir.1995) ("The ALJ is responsible for determining credibility,

resolving conflicts in medical testimony, and for resolving ambiguities.") (citing *Magallanes,*

881 F.2d at 750).

       Fourth, the ALJ discounted Dr. Haggard's opinion because he determined it was based on

Plaintiff's self-reports. As noted above, "when an opinion is *not more heavily* based on a

patient's self reports than on clinical observations, there is no evidentiary basis for rejecting the

opinion." *Ghanim*, 763 F.3d at 1162 (emphasis added). Here, Dr. Haggard treated Plaintiff

multiple times over a three month period. *See* AR 1127-39. The record shows Dr. Haggard

examined Plaintiff on each occasion, assessing her vascular, lymphatic, neurological,

dermatological, and musculoskeletal systems at each visit. *See id.* Plaintiff necessarily self-

reported some symptoms. *See*, *e.g.*, AR 1127 (noting Plaintiff "[a]dmits back pain, foot pain,

heel pain, leg cramps, osteoarthritis"). However, the record demonstrates Dr. Haggard's opinion

was based on his observations, the objective results of each exam, and Plaintiff's self-reports. In

light of the additional clinical observations by Dr. Haggard, the ALJ's decision to discount Dr. Haggard's opinion based on Plaintiff's self-reports is not supported by substantial evidence.

In summary, the ALJ gave three specific and legitimate reasons supported by substantial evidence to give Dr. Haggard's opinion little weight at Step Four. Thus, the ALJ's error at Step Two in failing to find Plaintiff's chronic pain not severe was harmless.

**II. Whether the ALJ erred in assessing the remaining medical opinion evidence and erred by failing to properly consider Plaintiff's RFC.**

The ALJ's error at Step Two with respect to Plaintiff's mental impairments requires remand to the Commissioner for proper consideration of Plaintiff's severe impairments and to reconsider each of the remaining steps in the administrative process incorporating Plaintiff's mental impairments and the work limitations possibly caused by additional severe impairments. As the ALJ's error at Step Two impacts all aspects of the ALJ's decision, the ALJ is instructed to re-evaluate this entire matter on remand, completing each step of the sequential evaluation process. Thus, it is unnecessary to address the other issues raised in Plaintiff's appeal.

CONCLUSION

Based on the above stated reasons, the undersigned recommends this matter be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the Acting Commissioner for further proceedings consistent with this Report and Recommendation. The undersigned also recommends judgment be entered for Plaintiff and the case be closed.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of de novo review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit

1  imposed by Rule 72(b), the clerk is directed to set the matter for consideration on July 15, 2016,

2  as noted in the caption.

3      Dated this 29th day of June, 2016.

David W. Christel
United States Magistrate Judge